opposite effect? In short, after carefully considering the counsels observations, after attending to every thing which learning and ingenuity could suggest against his decision, the chancellor feels a much stronger assurance that his decision is right, and that it will be approved by every judicious trader, not interested in the cause.

It is thereupon this, &c. adjudged, ordered and decreed, that the decree in this cause, passed on the, &c. be and shall stand good."

---※---

## COURT OF APPEALS, JUNE TERM, 1798.

### PURVIANCE vs. NEAVE, et. al.

WRIT OF ERROR directed to the General Court held for the western shore. It appears that the defendants in error brought an action of *debt*, in the Provincial Court, to April term 1775, against the plaintiff in error, for 3462*l*. 16s. 6d. *sterling money*, and that the said action was depending in that court at the formation of the constitution, and the abolition of the Provincial Court, and the establishment of the General Court. The general issue pleas were pleaded, and issues joined. At May term 1786, a judgment was entered by confession for the said sum of 3462*l*. 16s. 6d. *sterling money*, the said debt, and costs of suit, with an agreement to release the same upon the payment of the principal, interest, and costs of suit.

*S. Johnston*, for the plaintiff in error. This judgment was given for 3462*l*. 16s. 6d. *sterling money*, for the payment of 1731*l*. 8s. 3d. and interest, at 5 per cent from the 1st of June 1774.

By the act of assembly passed at November session 1781, *ch.* 16, s. 2, it is enacted, that all judgments and decrees, appraisements of the estate of any deceased person, and all penalties, fines and forfeitures, shall only be rendered, given, made or imposed, in *current money*, at the rate and value as therein mentioned; and all mortgages, debts, covenants, contracts, promises or agreements, heretofore made in sterling money, may be discharged in gold or silver coin (as therein mentioned) at the rate of 166*l*. 13s. 4d. current money for 100*l*. sterling. By this act of assembly all judgments were to be entered in current money; this judgment was entered at May term 1786, for *sterling money*, which then was and now is a foreign coin, and was not entered for the value thereof in current money, as all judgments for contracts

JUNE 1798.

Purviance
vs.
Neave.

in foreign money should be entered, and is therefore erroneous.

All actions brought for foreign money, *without expressing the value in current money*, should be in the detinet only, because the foreign money, unless made current by law, is only bullion—*Palmer*, 407. *Latch*, 77, 84. *Jones*, 69.

In the case of *Rastal vs. Draper, Yelverton*, 80, which was debt, plaintiff demanded 39*l.* and declared, that 1st May *anno* 1, he sold to defendant 20 northern cloths for 60*l.* Flemish, to be paid on request; which 60*l.* Flemish was of the value of 39*l.* English. The defendant pleaded *nil debet*, and found for plaintiff; moved in arrest of judgment, that the plaintiff ought to have demanded the sum according to the contract, which was for 60*l.* Flemish, and have shewn that it amounted to 39*l.* English. BUT *per totam curiam* not allowed, for the debt ought to be demanded by a name known, and the judges are not apprised of Flemish money; also, when the plaintiff has his judgment, he cannot have execution by such name, for the sheriff cannot know how to levy the money in Flemish. Same case in *Croke James*, 88. *Croke Elizabeth*, 536, same point.

From the time that independence was declared, sterling money became foreign money, and only bullion, and as such the sterling money, by the sum could not be recovered, but only the value thereof in current money. The act of assembly expressly directs, that all judgments shall be taken in current money; and the judgment in this case, not being taken in current money, but in sterling money, is therefore erroneous, and no execution can be had thereon by such name, for the sheriff cannot know how to levy the money in sterling, no more than any other foreign money; and is contrary to the plain words and meaning of the act.

It may be said in answer to this, that this action was brought before the revolution, when sterling money might have been recovered as such. and therefore the judgment was taken as the suit was brought.

In answer to this, I say, that no judgment, after the passing of that law, could be taken but for current money, as I apprehend it might have been in this case had the pleadings been amended so as to suit the judgment, or the plaintiff might have brought another suit in debt for the value, in current money, of the sterling debt, and taken judgment accordingly.

As this judgment, therefore, is for sterling money only, and not taken according to the express direction of the act of assembly, I apprehend it is a judgment contrary to law, is erroneous, and ought to be reversed.

*Martin,* (Attorney General,) for the defendants in error. The great object of the law of 1781, *ch.* 16, *s.* 2, was, that all judgments should be so entered that the amount in current money should be clearly and distinctly ascertained on the record, by wh ch the judgment should be satisfied, so as no dispute might take place between plaintiff and defendant in settling the same, or with the sheriff on an execution. But it cannot be contended, nor has it ever been supposed, that every judgment should be entered so as to specify the particular pounds, shillings and pence, of current money, in pounds, shillings and pence.

A judgment entered for 100 shillings would be as good as if the judgment was entered for 5*l.* A judgment for 1806 pence would be as good as a judgment for 7*l.* 10*s.* 6*d.* because the operation *of the law* on the record, *without travelling thereout,* ascertains the number of pounds, shillings and pence, or that sum in current money which is to be paid. So a judgment for 100 dollars would be as good as a judgment for 37*l.* 10*s.* 0*d.* the *law* having as clearly ascertained what proportion a dollar bears to a pound of current money as the proportion a shilling bears thereto. So also a judgment for 12*l.* sterling is as good as if the judgment was for 20*l.* currency, it being by operation of law, without travelling out of the record, as well known that 12*l.* sterling makes 20*l.* current money, as it is known that 100 shillings are 5*l.* so of any other sum in sterling money, the exact amount of which in current money is ascertained by law without travelling out of the record.

Tobacco is no more current money of Maryland, under that act of assembly, than English guineas, crowns or shillings, or any other sterling money. A judgment entered in tobacco is no more a judgment entered in current money, than a judgment entered for sterling money is a judgment for current money. Yet the practice is uniformly, when a suit is brought on public bonds, bail bonds, and other such, where the penalty is in tobacco, to bring actions of debt for the penalty, and take judgment for the penalty in tobacco. So in all judgments against defendants, part of the judgment, the cost part, is always rendered in tobacco; and where the judgment is against the plaintiff, the whole judgment, which is for costs, is rendered for so many pounds of tobacco, not for so many pounds, shillings and pence, as the tobacco comes to; and this very rightly in my opinion. because in all these cases the law has declared what proportion each pound of tobacco bears to current money; that is to say, that each pound of the tobacco is equal to one penny half-penny; thus the law, operating on the record,

ascertains the precise sum of current money for which the judgment is given—and if this is not the true construction, every judgment given, since this act, against defendants, are erroneous in part, and every judgment given against plaintiffs are erroneous in the whole. But every principle which applies to judgments entered in tobacco, whether for debt or costs, applies precisely as strong to judgments entered up in sterling, the law ascertaining the value of the sterling in currency as much as it doth the value of the tobacco.

"*Id certum est quod certum reddi potest.*" Wherever the certainty of the sum of current money, for which the judgment is given, appears upon the record itself by operation of law, without applying to any thing *de hors* the record, it is sufficient and must be a good judgment for current money.

Upon a judgment given for 30*l.* sterling, you may declare as if for a judgment for 50*l.* current money; for a person may always declare according to the expressions or the operation of law thereon. So it has been determined, that on a bond for 100*l.* specie, y‑u may declare as on a bond for 100*l.* current money; and in each case no averment of the value is required; for no averment is required where the value is known by legal operation.

I admit, a judgment for so many guilders, livres, sous, chequins, pounds of Pennsylvania currency, York currency, &c. would be bad, because we have no law declaring and settling the value of any of these in our currency; and therefore the amount of such judgment could only be ascertained by travelling out of the record, and having recourse to extraneous evidence, which each party might contend, and which could be decided by a jury on a trial.

*S. Johnston in reply.* From the time that the United States declared themselves independent, sterling money was as much foreign money as the livres, guilders, sous, or chequins, of other foreign nations; they were all equally foreign coin, and could not be sued for in an action of debt in the *debet and detinet* only, *without an averment of the value in current money.* No law then existing had declared sterling money, no more than any other *foreign money*, the current money of this state. For the convenience therefore, and accommodation of the citizens of this state, the act of assembly of *November* 1781, *ch.* 16, was made, to declare what foreign gold and silver coin should be deemed the current money of the state, which are thereby enumerated, and were to be received in payment of all debts, covenants, contracts, promises and agreements, at the value therein express‑

ed, which is the value in current money. All other money, but that which was thereby enumerated, remained foreign coin, and was no more than bullion, and could not be recovered in an action brought in the *debt and detinet*, without an averment of the value in current money.—See *Palmer*, 407. *Latch*, 77, 84. *Jones*, 69. *Croke Eliz*. 536. *Moor*, 704. And by the 2d *section* of the act of *November* 1781, *ch*. 16, "ALL JUDGMENTS AND DECREES," &c. should "only be rendered, given, made or imposed, in current money, at the rate and value aforesaid; but that all mortgages, judgments, debts, covenants, contracts and promises, made for sterling money, might be discharged in any gold or silver coin therein mentioned, at the rate of 166*l*. 13*s*. 4*d*. current money, for 100*l*. sterling."

The plain and obvious construction of this section is, that whatever the contract is, or wherever made, or payable in whatever foreign coin, *if sued for*, it must be reduced to the value of the current money of this state, and the judgment taken, or decree made, for that sum in current money; and that 166*l*. 13*s*. 4*d*. of said current money, would pay a sterling debt of 100*l*. but the judgment was to be entered for the value in current money, and could not be regular in any other manner, after the passing of that law. But as former judgments had been entered, and decrees made, and other contracts had been made to be paid in sterling money which remained unsettled, this section also ascertains at what rate in current money the sterling debt is to be discharged in such cases; but gives no countenance to the entering of future judgments in any other manner than for current money. And so has been the practice (as I understand) ever since, and if in a few instances. judgments may have been since entered in sterling money, they have been done without a proper attention to the law, and are erroneous. The cases put by the attorney general of judgments for 100 shillings in the place of 5*l*. and 1806 pence in the place of 7*l*. 10*s*. 0*d*. are nothing to the purpose, because the shillings, in the one case, and the pence in the other, are as much the current money of this state as the pounds are, and therefore the judgment in either case would be agreeable to the act, though sterling money would not. So a judgment for 100 dollars might be good; but why? Because by this very act Spanish milled dollars were made current here, and their value ascertained; and also at this time *dollars* are the current money of the United States, and their value ascertained; but a pound sterling is no part of the current money of the United States, and therefore a judgment for 12*l*. sterling would not be good. though it might be discharged by the payment of 20*l*. current money.

JUNE 1798.

Purviance
vs.
Neave.

As to the practice of suits on public bonds, bail bonds, and other such, where the penalty is in tobacco, the practice may have been, as the attorney general has mentioned, to take judgment for the penalty in tobacco. The propriety of this judgment in debt (being for a specific thing,) might have been justly questionable, had it not been countenanced by long practice, and the several acts of assembly of 1713, *ch.* 3, 1724, *ch.* 6, and 1763, *ch.* 18, for payment of tobacco contracts, which being a staple of the country, many payments are by law directed to be made in it. All public dues and officers fees are to this day to be levied in tobacco by express laws; but the measure of receiving in current money is therein also ascertained at 12*s.* 6*d.* per 100.

As to judgments for the costs in tobacco, these being the amount of the clerk's, attorney's and sheriff's fees, to be charged in tobacco by express law, the practice has always been to take the part of the judgment, which relates to costs, in tobacco. The act of assembly of *Nov.* 1781, *ch.* 16, was only intended that the debt sued for should be recovered, and the judgment for the same should thenceforth be entered in current money; as to the costs they were not in the purview of that act, and were settled by other laws, which have been continued and now in being. This act of assembly is express, "that all judgments, decrees, &c. should be rendered in current money, at the rate and value of the gold and silver" therein enumerated; this part of the law would be altogether useless and unnecessary, if that part thereof which directs "that all mortgages, judgments, debts, covenants, contracts and promises, for sterling money, might be discharged in said gold or silver at 166*l.* 13*s.* 4*d.* current money, for 100*l.* sterling money," was by *operation of law* sufficient to justify the entering the judgment in sterling money. It was intended, that each part of that section of the act should operate, the first, on all judgments to be taken after that time; the latter part, as to the sum of gold or silver currency necessary to pay sterling debts, and related principally to the sterling debts contracted before the then war.

As to a suit on a judgment for 30*l.* sterling, and declaring for 50*l.* current money, you may declare in debt for any money, averring the value in current money; but the judgment must still be taken in current money, and cannot be in the foreign money. And as to the determination that on a bond for 100*l.* specie you may declare for 100*l.* current money, the specie enumerated in the act is current money, and may well be declared on as such. To conclude, as this judgment has been taken for sterling money, contrary to the act of assembly,

and as the uniform practice, since the making that law, has been to take the judgments for sterling debts to the amount thereof in current money, at the rate of 166l. 13s. 4d. currency, for 100l. sterling, I therefore apprehend, the judgment in this case should have been so entered, and is therefore erroneous and ought to be reversed.

THE COURT OF APPEALS *affirmed* the judgment of the General Court.

---

## COURT OF APPEALS, JUNE TERM, 1798.

### LAWRENCE *vs.* DORSEY's Devisee and Executrix.

APPEAL from a decree of the Court of Chancery. The bill states that the complainant, (the present appellant,) having on the 29th of June 1778, purchased of Colonel *Thomas Dorsey* a parcel of land called "*The Resurvey on Cold Friday*," lying in Frederick county, containing 419 acres of land, at and for the sum of 50s. per acre, continental money, the said *Dorsey* delivered possession of the land, and entered into an agreement to convey on payment of the purchase money. That the said purchase money had been fully paid. That there was a deficiency in the land sold, &c. That the defendant (the present appellee,) had brought an ejectment at law, and had obtained a judgment for possession of the said land. *Prayer* that the defendant might be compelled by a decree to convey the said land to the complainant in fee simple, &c. and be enjoined from proceeding at law upon the said judgment.

*The answer.*—Admitted that at the time of the agreement aforesaid continental money was the common medium in which transactions and bargains for land were generally made; and that the said *Thomas Dorsey* would have received continental money, she believes, and would have been satisfied with the value of the said continental money at the time of the contract, although the land was worth far more, being always rated by her testator to be worth 30 or 35s. specie per acre. That at the time of the said agreement, although the difference between continental money and specie was at the rate of *four for one*, yet it was not so considered in the sales of real property. That the complainant paid to the said *Thomas*, in his lifetime, when continental money was at the rate of *sixty for one*, 1926 continental dollars, and 20 bushels of wheat; which two articles added together, and estimated in specie, amount to 19l.